The opinion of the Court was delivered by
DüNKIN, O. J.
At a Court of General Sessions held for Bichland District, in March, 1867, the defendant, Thomas J. Bobertson, was indicted and convicted of assault and battery, and by his Honor Judge Dawkins then presiding, was sentenced to pay’ a fine of five hundred dollars.
*20 For an offence of similar character, of which he was found guilty at the same Court, the defendant, W. A. Harris, was sentenced to pay a fine of three hundred dollars.
On non-payment of these fines executions were issued, and on the returns thereon, the judgment of the Circuit •Court was announced, which is the subject of this appeal.
On the part of the defendants it is insisted that the ten-' der of bills of the Bank of the State of South Carolina, issued prior to the late war, to the amount of the fine, entitled them to have satisfaction entered on the execution.
A fine has been described as “amends, or pecuniary mulct for an offence committed.” In prosecutions of this character, the violation of the public peace having been judicially ascertained by the verdict of the jury, the purpose of the magistrate in passing sentence is not to cpm-pensate in,damages the party assaulted, but to vindicate the offended majesty of the law and punish the transgressor. It is within his discretion to inflict the punishment of fine, or imprisonment, or both. It would be competent for him to require as part of the sentence, that the penalty be paid in gold, or that the defendant stand committed until the fine be paid. The only limit to his judicial discretion is the provision of the constitution that “ excessive fines shall not be imposed, nor cruel punishments inflicted.” • But what is the meaning of the sentence without such additional words ? Formerly there was no difficulty in determining what was meant by a sentence to pay a fine of five hundred dollars. The only kind of dollars recognized by the constitution was gold’ and silver. But, in later times, paper dollars not only constitute a large proportion of the currency of the country, but treasury notes, of this character, have been declared by Congress a legal tender. It may be necessary therefore to determine the proper interpretation of the sentence as expressing the intention-of the Judge. If the sheriff had declined to receive in satisfaction any thing but *21 gold and silver, when tbe defendant tendered old bills of the Bank of the State, the issue would then have been directly presented. At the time when sentence was passed, (March, 1867,) the ordinary currency was United States treasury notes. Hone other was in circulation. Adopting the construction of the sheriff the execution could only be satisfied by the payment of about six hundred and seventy dollars in treasury notes; the defendants’ proffer amounted •to about fifty dollars, or less in the same currency. The Court must presume that the presiding Judge, in fixing the sentence, looked to the existing circumstances, to the ordinary currency in circulation, and affixed the pecuniary mulct accordingly. He did not intend that gold should be exacted, nor, on the other hand, that the public justice should be mocked by a mere semblance of satisfaction. Taking this view of the case, the Court is of opinion that the sheriff was well warranted in declining to receive five hundred dollars of bills of the Bank of the State in satisfaction of the execution. The Court deems it only necessary to add that, in the case of The Graniteville Manufacturing Company vs. Roper, recently heard in the Court of Errors, .the matters involved in the first and second grounds of appeal have been adjudicated adversely to the defendants..
It is ordered and adjudged that, in each case, the motion be dismissed.
Wardlaw and Inglis, A. J., concurred.

Motions dismissed.